## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<div style="float:right">

:
ESTHER LOEBENSTEIN,                                      :
                                                        :
                                                        :
            Plaintiff,                                  :   Civil Action No. 15-745 (PGS)(DEA)
                                                        :
        v.                                              :   **MEMORANDUM OPINION**
                                                        :        **AND ORDER**
                                                        :
CHASE BANK,                                             :
                                                        :
            Defendant.                                  :
                                                        :

</div>

ARPERT, Magistrate Judge

 This matter comes before the Court on a Motion by Defendant Chase Bank ("Defendant" or "Chase") to stay this action until the Federal Communications Commission (the "FCC") issues opinions on certain pending Petitions which Defendant contends will decide an issue central to this action. *See* Dkt. No. 9. Plaintiff opposes Defendant's Motion. *See* Dkt. No. 10. For the reasons set forth below, Defendant's Motion to stay this action is DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY

 Plaintiff's Complaint was filed on February 2, 2015 and alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 1. Plaintiff claims that over a four year period, Defendant called and sent "at least several dozen" text messages to her cellular telephone via an automatic telephone dialing system ("ATDS"). *Id.* at ¶ 7. Specifically, Plaintiff alleges that Chase sent "numerous" text messages to her cellular phone providing account information, such as balance and transaction details, related to a Chase bank account that did not

belong to her. Dkt. No. 10 at p. 7. According to Plaintiff, these calls and texts were made without her permission and were intended for the third party owner of the Chase account. *Id*.

Defendant contends that Plaintiff's allegations describe "wrong party calls", which can arise when a company obtains the telephone number at issue from one of its customers who, after providing the number to the company, and unbeknownst to the company, ceases use of the telephone number. *See* Dkt. No. 9. The telephone carrier, again unbeknownst to the company, then re-assigns the number to another person who receives the wrong party calls. *Id*.

Defendant seeks a stay largely on the grounds of primary jurisdiction, citing several Petitions that have since been addressed by the FCC. Defendant asserts that an FCC order regarding the petitions could "have substantial, if not dispositive, impact on this litigation." Dkt. No. 9. In opposition, Plaintiff contends that primary jurisdiction, and deferral to the FCC, is not necessary to decide any issues in this case. *See* Dkt No. 10. Plaintiff further contends that awaiting an FCC decision could unduly delay resolution of the action, and that any FCC decision may not impact this action at all. *See* Dkt. No. 10.

## II.    LEGAL STANDARD

### A. The Doctrine of Primary Jurisdiction

The doctrine of primary jurisdiction applies where a claim is originally cognizable in the courts but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). "[I]n such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id*.  Courts have invoked the primary jurisdiction doctrine "to advance regulatory uniformity," "to answer a question … within the agency's discretion," and "to benefit from technical or policy

2

considerations within the agency's … expertise." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) (invoking primary jurisdiction doctrine in TCPA case) (internal quotation marks omitted); *Richmond Bros. Records, Inc. v. U.S. Spring Communications, Co.*, 953 F.2d 1431, 1435 (3d. Cir. 1991) (primary jurisdiction particularly appropriate where "the issue involves technical questions of fact uniquely within the expertise and experience of the agency").

Importantly, "[n]o fixed formula exists for applying the doctrine…." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). However, the Third Circuit has articulated four factors useful in determining whether a court should abstain on the basis of primary jurisdiction. Those factors are:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) Whether the question at issue is particularly within the agency's discretion;
> (3) Whether there exists a substantial danger of inconsistent rulings; and
> (4) Whether a prior application to the agency has been made.

*Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).

Where the doctrine of primary jurisdiction does apply, it "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

**B. The Telephone Consumer Protection Act**

The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology" such as "computerized calls dispatched to private homes[,]" and "bans certain invasive telemarketing practices." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2102). In relevant part,  the TCPA prohibits calling any cellular phone using any automatic dialing system or an artificial or prerecorded voice, unless the call is for emergency purposes or if the call is "made with the prior express consent of the called party[.]" 47 U.S.C.A. § 227 (b)(A)(iii). The TCPA creates a private right of action for affected consumers, and allows them

to recover the greater of their actual monetary loss or $500 for each violation. *Id.* § 227(b)(3). "[P]rior express consent by the called party" is a safe harbor against liability under the TCPA. *Id.* § (b)(1)(A).

The term "called party" has been subject to some degree of interpretation, stemming from the increasing trend of cell phone numbers being reassigned from one consumer to another. A caller may have permission to call a consumer at a given cell phone number, but if that number is reassigned to another customer, the caller may be unwittingly calling a new, non-consenting party. These so called "wrong party calls" have been the issue of litigation in several cases. The crux of the issue has been whether the "called party" is the intended recipient of the call, or the actual recipient of the call. The circuits that have issued decisions on the matter have generally favored the latter interpretation. *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) (rejecting argument that the "intended recipient" is the "called party" referred to in 47 U.S.C. § 227(b)(1)(A)); *Soppett v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012) ("We conclude that 'called party' in § 227(b)(1) means the person subscribing to the number at the time the call is made.").

However, some district courts have stayed actions related to the term, pending the outcome of Petitions submitted to the FCC. *See, e.g.*, *Higginbotham*, 2014 U.S. Dist. LEXIS 85584 (relying on primary jurisdiction doctrine to stay the case until the FCC proceedings are resolved); *Gensel v. Performant Tech., Inc.*, NO. 13-C-1196, 2015 U.S. Dist. LEXIS 9736, at *1 (E.D. Wis. Jan. 28, 2015) (staying action involving "wrong party calls" pending FCC's ruling on Petitions). The first such Petition, filed on January 16, 2014 by United Healthcare, sought clarification on the applicability of the TCPA to "informal, non-telemarketing autodialed and prerecorded calls to wireless numbers for which valid prior express consent has been obtained but which, unbeknownst to the calling party, have subsequently been reassigned from one wireless subscriber to another." (Request for Judicial Notice ("RJN") Ex. A ("United Healthcare Petition") at 1.).

4

On June 18, 2015 the FCC provided some degree of clarity, when it adopted a package of declaratory rulings which were summarized in a press release. In relevant part, the release states that "Reassigned Numbers Aren't Loopholes – If a phone number has been reassigned, companies must stop calling the number after one call." Press Release, Federal Communications Commission, FCC Strengthens Consumer Protections against Unwanted Calls and Texts (June 18, 2015), ("FCC June 18, 2015 Declaratory Rulings Press Release."). In the press release, the FCC "embrac[ed] the opportunity afforded by the 21 requests for clarification of the law to clearly stand with consumers against unwanted calls." *Id*.

## III.   DISCUSSION

According to Plaintiff's Complaint, "Defendant was attempting to reach a third party with its text message updates regarding that third party's account." Dkt. No. 1 at ¶ 10. This likely places the case squarely within the realm of "wrong party" calls. While there may have been some benefit in granting Defendant's Motion prior to the recent FCC ruling, the Defendant's purported concerns have been addressed and any benefit to a stay is no longer significant.

Accordingly, because the Court finds that Defendant's request for a stay is moot in light of the FCC's recent ruling on this issue, the Court declines to invoke the doctrine of primary jurisdiction in this matter. Under the first two factors, the Court finds that while the question at issue is squarely within the FCC's expertise and discretion, the Court now has the benefit of the FCC's ruling on this subject and therefore a suspension of the judicial process in this matter is not warranted.

With respect to the third factor; the danger of inconsistent rulings, especially regarding "wrong party calls", has been substantially diminished by the recent FCC ruling. It is likely that many courts will rely on the recent decision for guidance in "wrong party calls". Therefore, the third factor additionally weighs against an exercise of primary jurisdiction. Likewise, the fourth factor no longer favors primary jurisdiction since a prior application to the agency has been made, and addressed. Thus, every one of the *Raritan Baykeeper* factors suggests that invoking the doctrine of primary jurisdiction is improper in this case.

5

Defendant's grounds for staying this action are no longer pertinent and there is no benefit to be garnered from staying this action because the relevant Petitions have been addressed by the FCC. While it remains to be seen whether Defendant was correct in stating that "resolution of … these submissions to the FCC will have substantial, if not dispositive impact on this litigation" the submissions have nonetheless been resolved. While at this juncture the Court makes no finding on the merits of Plaintiff's claims, it is evident that the FCC has provided the level of guidance it deems necessary to address and clarify the issues presented in the Petitions relied on by Defendant in its Motion to stay. Accordingly, Defendant's Motion for a stay of this matter is DENIED.

## IV.     CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 22nd day of July, 2015,

**ORDERED** that Defendant's Motion to stay this action [Dkt. No. 9] is **DENIED.**

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge

6